United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD MIZERIK,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 18-cv-01241-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 25 |

## INTRODUCTION

Plaintiff Donald Mizerik ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Nancy A. Berryhill ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 19, 25. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the reasons set forth below.

## BACKGROUND

Plaintiff is 65 years old and worked as a sales representative and vice president for small companies that bought computer memory chips, formatted them, and sold them to third parties. AR 30-31, 124.

In December 2015, Frederick Benson, M.D., diagnosed Plaintiff with prostate cancer, noting he had "clinically localized very high risk, high bulk adenocarcinoma of the prostate. AR 428, 454. Plaintiff saw Edmund Tai, M.D., on January 14, 2016, for an opinion on the type of

procedure he should undergo. AR 415-24. Dr. Tai recommended brachytherapy or prostatectomy. AR 420.

On January 27, 2016, Plaintiff started androgen deprivation therapy with Robert Panvini, M.D. AR 431, 454. Plaintiff had treatments with Dr. Panvini throughout 2016. AR 435-38. Plaintiff had a follow-up with Dr. Panvini on February 17, 2017, during which he complained of ongoing urgency and frequency of bowel movements. AR 444-45. Dr. Panvini noted that the bowel movements were slower to resolve than typical. AR 445.

On April 14, 2016, Rizwan Diamond Nurani, M.D., performed radioactive seed implantation of the prostate, placement of calypso markers into the prostate, and cystogram procedures. AR 271-72. Dr. Nurani documented that after the initial radiation, Plaintiff was to continue with five weeks of external radiation. AR 274.

On April 4, 2017, Consultative Examiner Satish Sharma, M.D., examined Plaintiff. AR 369-71. Dr. Sharma noted that Plaintiff had a history of anxiety and side effects from the treatment for prostate cancer, including day and night sweats, hot flashes, and complaints of increased fatigue. AR 369. Dr. Sharma provided the following functional assessment:

> Pushing, pulling, lifting and carrying restrictions: 20 pounds occasionally and 10 pounds frequently.
>
> Walking and/or standing limitations: 6 hours cumulatively out of an eight-hour workday with appropriate breaks.
>
> Sitting limitations: No limitations.
>
> Postural limitations(i.e. bending, kneeling, stooping, crawling and crouching): No limitations.
>
> Speech, hearing and seeing: No restrictions.
>
> Use of the hands for fine and gross manipulative movements: No limitations.
>
> Deferred to appropriate specialist for the evaluation of anxiety.

AR 371.

Two state agency psychological consultants also considered the evidence of record – R. Paxton, M.D., on December 9, 2016, and E. Aquino-Caro, M.D., on January 10, 2017 – and

opined that Plaintiff did not have a severe mental impairment. AR 45-46 (Dr. Paxton), 55 (Dr. Aquino-Caro).

On April 6, 2017, Maria Acenas, M.D., performed an independent consultative psychiatric evaluation. AR 373-78. She noted Plaintiff drove himself to the examination and came alone. AR 376. Plaintiff informed Dr. Acenas that he is capable of performing his personal grooming and hygiene, that he does the household chores of cooking ,cleaning, and doing the laundry, and that he socializes with a few of his friends. AR 377. Dr. Acenas found Plaintiff to be friendly and cooperative, and that his judgment and insight were normal. *Id.* She diagnosed Plaintiff with "[a]nxiety due to medical condition" and "[m]oderate stressors of unemployment and chronic medical condition." *Id.* Dr. Acenas found that, from a psychiatric standpoint, Plaintiff had no impairments in any work-related abilities. AR 378.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On October 31, 2016, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on January 12, 2016 due to anxiety and prostate cancer. AR 122-30, 183. On December 9, 2016, the Social Security Administration ("SSA") denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. AR. 62-65 Plaintiff subsequently filed a request for reconsideration, which was denied on January 12, 2017. AR 66-72. On January 17, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 73-74. ALJ T. Patrick Hannon conducted a hearing on August 14, 2017. AR 26-41. Plaintiff testified in person at the hearing and was represented by counsel, John Robertson. The ALJ also heard testimony from Vocational Expert ("VE") Thomas Linville.

**A.    Plaintiff's Testimony**

Plaintiff testified he underwent "about 18 to 20 months worth of hormone injections and just feeling like garbage, and starting to come out of it a little bit and I'm starting to get back on my feet." AR 32. When the ALJ asked Plaintiff what prevented him from working, he responded that "most of the problem has been from an emotional standpoint because of the hormone injections, but a lot of it has been because of all the radiation that I had gone through." AR 33.

3

Plaintiff testified he had "a serious bowel problem" and had to plan his mornings "very, very carefully so that I'm not too far away from a bathroom at any given time." *Id.* He stated it took him "about three or four hours to get to the point where I know that I can actually go somewhere and go out." *Id.* During that three-hour period in the morning, Plaintiff would have two or three bowel movements. AR 37. Initially the bowel movements were quite painful and he would be in the bathroom for 45 minutes to an hour for each, but it had gotten better to the point where he could control the timing a bit and each movement would not require so much time in the bathroom. *Id.* After that initial morning period, he would typically have no more than one more bowel movement throughout the day. *Id.*

As to his daily activities, Plaintiff testified he had a fatigue problem that did not affect whether he could sit or stand, but caused a reduced endurance level. AR 38. He stated he did "most of the chores around the house," but had to do such activities in "spurts of 15, 20 minutes at a time and then just sit down." *Id.* A typical day included walking the family's dog and chores such as washing dishes, doing laundry, or vacuuming. AR 39. He also testified he is able to attend social events and go out for dinner or a movie, although he does become anxious if there are a lot of people he has to interact with. *Id.*

**B.        Vocational Expert's Testimony**

When questioned by Plaintiff's attorney about how many days a person can miss in a month due to medical symptoms and still maintain their employment, the VE testified that a person "can miss about a day a month on average and be within standard, but that's maximum." AR 40. When Plaintiff's attorney asked if a person could maintain employment if they were "off task 20 percent of the time, and that's not performing their usual and customary assignments," the VE testified that a person needs to be able to produce about 85 percent of what they are expected to produce in an average day to be in competitive employment. *Id.*

As to Plaintiff's past work as a sales representative, the VE testified that the Dictionary of

Occupational Titles ("DOT")[1] defined it as "light work."[2] AR 31. As to his past work as a vice president of sales, the ALJ testified it fell under the DOT for sales management, which involved sedentary work.[3] *Id.*

**C.     The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[4] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful

---

[1] The DOT, published by the United States Department of Labor, Employment & Training Administration, classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1). It may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").
[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).
[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).
[4] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since January 12, 2016. AR 13.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: status post-prostate cancer. AR 13.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 15.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform the full range of light work. AR 16.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial

gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined that Plaintiff could perform past relevant work as a sales representative and sales manager. AR 18.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). As he found that Plaintiff could perform past relevant work and was therefore not disabled, the ALJ did not reach this determination in his analysis.

### D. ALJ's Decision and Plaintiff's Appeal

On September 26, 2017, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 8-19. This decision became final when the Appeals Council declined to review it on October 25, 2017. AR 1-3. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On April 19, 2018, Plaintiff filed the present Motion for Summary Judgment. On May 30, 2018, Defendant filed a Cross-Motion for Summary Judgment. Plaintiff filed a Reply on July 11, 2018. Dkt. No. 28.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The

7

1  court must consider the administrative record as a whole, weighing the evidence that both supports

2  and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).

3  However, "where the evidence is susceptible to more than one rational interpretation," the court

4  must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

5  Determinations of credibility, resolution of conflicts in medical testimony, and all other

6  ambiguities are to be resolved by the ALJ. *Id.*

   Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Id.* (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). A court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1111 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## DISCUSSION

**A.    Social Security Ruling 96-8**

Plaintiff first argues the ALJ, in determining Plaintiff's RFC, did not discuss the impact of his bowel function or anxiety attacks in a function-by-function analysis as required by Social Security Ruling ("SSR") 96-8p. Plaintiff contends the ALJ improperly dismissed the evidence which finds his limitations would prohibit him from being able to take care of his medical needs while working as a salesperson. Pl.'s Mot. at 8-9.

The RFC assessment describes an adjudicator's finding about the ability of a claimant to perform work-related activities. SSR 96-5p. The ALJ has the responsibility to make findings of fact concerning a claimant's RFC based on an assessment primarily made by a medical source. 20 C.F.R. §§ 404.1526, 416.946. In addition, the ALJ must consider all of the relevant evidence, including medical records, lay evidence, and "'the effects of symptoms, including pain, that are

reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96-8p).

The RFC requires the ALJ to consider a claimant's ability to meet certain job demands, such as physical demands, mental demands, sensory requirements, and other functions. 20 C.F.R. §§ 404.1545(a), 416.945(a). This requires an assessment of the claimant's exertional limitations (sitting, standing, walking, lifting and carrying abilities) and non-exertional limitations (postural and manipulative abilities and mental capacity). SSR 96-8p. Social Security Ruling 96-8p requires the RFC to identify a claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. This includes the functions related to the claimant's physical abilities, mental abilities, and any other abilities affected by the claimant's impairment or impairments. 20 C.F.R. §§ 404.1545(b)-(d); 416.945(b)-(d). Pursuant to the narrative discussion requirement provided in SSR 96-8, the RFC assessment must contain a "thorough discussion and analysis" of the objective medical and other evidence, including pain, and a "logical explanation of the effects of these symptoms on the individual's ability to work." SSR 96-8.

Here, the ALJ's RFC finding specifies that Plaintiff can perform light work as defined in 20 C.F.R. § 404.1567(b). AR 16.

1. <u>Bowel Movements</u>

Plaintiff argues the ALJ failed to consider his inability to control bowel movements. Pl.'s Mot. at 9. However, the ALJ concluded that Plaintiff's ability to work was not limited by his symptoms. AR 18. The ALJ noted Plaintiff's testimony regarding his symptoms:

> The claimant testified that he cannot leave his house within the first three hours after he wakes up. The claimant indicated that he could not get up and go to work because he would have a bowel issue in the car. During the three-hour period in the morning, the claimant testified that he was constantly in the bathroom at this time last year; at times, he was in the bathroom 30 to 45 minutes at a time. . . . The claimant testified that he has two to three bowel movements within the first three hours of the day; and one more bowel movement for the rest of the day. When he was suffering the most from his treatment, the claimant testified that he had fatigue issues.

9

AR 16-17. Despite this, the ALJ concluded based on the evidence in the record that Plaintiff's ability to perform light work was not limited. AR 18. As to Plaintiff's statements about the intensity, persistence, and limiting effects of his bowel issues, the ALJ found they were inconsistent because the medical record, including Plaintiff's statements, revealed that his symptoms were gradually improving. AR 17. The ALJ noted that on May 12, 2016, Plaintiff reported normal bowel function, and on August 1, 2016, he reported his bowel function was notable for less looseness of stool. AR 17, 273, 298. On August 15, 2016, Plaintiff reported he was feeling well, his night sweats were not too bothersome, and he had begun resuming normal exercise such as walking his dog. AR 17, 381. On November 15, 2016, Plaintiff reported he resumed normal exercise and walked his dog three miles every day. AR 17, 285. The ALJ did note Plaintiff reported a resumption of urgency and frequency of bowel movements on February 17, 2017, but that Plaintiff also stated his condition still gradually improved since the fall of 2016, with only occasional stool looseness and the frequency of bowel movements improved to two or three times a day. AR 17, 389. The ALJ also considered Plaintiff's daily activities, including that he does most of the chores around the house, does all the dishes and laundry because his wife works fulltime, and that he drove to the store in a typical day, which indicated that Plaintiff is able to drive without fear of a bowel movement. AR 17-18. Finally, the ALJ considered the opinion of Dr. Sharma, who examined Plaintiff in April 2017 and opined that Plaintiff could perform the full range of light work. AR 18, 371.

Plaintiff also argues there must be an additional medical determination on the degree of his bowel symptoms and that the ALJ improperly substituted a medical doctor's opinion with his own opinion. Pl.'s Mot. at 11, 13-14, 15-16. However, a claimant's RFC is an administrative finding, not a medical finding. 20 C.F.R. § 404.1527(e)(2)2; *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[i]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity"); *Magallanes*, 881 F.2d at 753 (ALJ need not agree with each aspect of a physician's opinion in order for it to constitute substantial evidence in support of the ALJ's decision). Plaintiff suggests a second consultative examination was required to determine whether

10

his condition had improved sufficiently for him to perform his past relevant work. Pl.'s Mot. at 11. It is true that SSA may ask a claimant to undergo a consultative examination at the agency's expense in the absence of sufficient medical evidence about the claimant's condition. 20 C.F.R. §§ 404.1517, 1519. However, the ALJ's duty to develop the record further "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff himself admitted that his condition has improved. AR 36, 369.

Finally, Plaintiff argues the ALJ committed error by suggesting "there are a variety of products to help with [his] incontinence issues." AR 18. However, even if the Court were to find the ALJ committed error by making this statement, Plaintiff has not met his burden of showing that the error is harmful where, as here, substantial evidence otherwise supports the ALJ's decision. An error "is harmless where it is inconsequential to the ultimate nondisability determination. In other words, in each case we look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115 (9th Cir. 2012) (internal quotation marks and citations omitted). Plaintiff argues "[i]t is not reasonable to assume his doctors have not given him medication to treat his bowel problem," and "there is no medical evidence in the record from any doctor stating there are medications or treatments which [Plaintiff] could use." Reply at 2. But the ALJ did not base his decision solely on this statement; rather, as discussed above, he looked at the record as a whole, including four medical opinions that support the ALJ's conclusions that Plaintiff's anxiety was not severe and his bowel symptoms were controlled such that he could perform light work. AR 45-46, 55, 371, 378. While Plaintiff urges a different interpretation of the evidence, this is not a basis for reversal. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (even if the medical evidence were "susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Thus, the Court finds the statement is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (quoting *Stout*, 454 F.3d at 1055).

In sum, the ALJ's findings regarding Plaintiff's bowel issues are supported by substantial

11

evidence.

2. <u>Anxiety</u>

Plaintiff also argues the ALJ failed to properly consider his anxiety, which causes anxiety attacks and limits his ability to function. Pl.'s Mot. at 9, 16. The ALJ found Plaintiff's mental impairment of anxiety "does not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore nonsevere." AR 14. Plaintiff contends this finding is in error because Dr. Acenas diagnosed him with anxiety, and she therefore found him to have a severe impairment. Pl.'s Mot. at 16.

Having reviewed the record, the Court finds substantial evidence supports the ALJ's findings. For example, the ALJ properly found that Plaintiff had not received any mental health treatment apart from a prescription for Lorazepam from his primary care physician (AR 14, 376 ["No psychiatric treatment" and "no previous psychiatric hospitalization"]). The ALJ properly considered Plaintiff's treatment history and the fact that his symptoms were controlled without higher level intervention at a hospital or with a specialist. In addition, the ALJ noted there was no objective evidence, such as a mental status examination, to demonstrate a severe mental impairment . AR 14. A review of the record supports this finding. Plaintiff denied anxiety and depression on January 27, April 16, August 15 and November 15, 2016 and February 27, 2017; on examination, he was a well-nourished, well developed patient in no acute distress, with normal communication ability, normal mood with an appropriate affect, and appropriate orientation. AR 14, 382-84, 386-88, 392-94, 429-30, 433. On January 19 and August 1, 2016 and February 17, 2017, he was in no distress and able to answer questions fully and appropriately. AR 389, 437, 454.

Three medical opinions also support the ALJ's finding. Two State agency psychological consultants – Drs. Paxton and Aquino-Caro – both opined that Plaintiff did not have a severe mental impairment. AR 15, 45-46, 55. The agency also obtained a psychiatric consultative examination from Dr. Acenas. AR 376-78. Plaintiff told Dr. Acenas that he socialized with a few friends and did household chores including cooking, cleaning, and laundry. AR 14, 377. Dr.

12

Acenas performed a mental status examination, which reflected that Plaintiff was friendly and cooperative, could remember 2/3 objects in three minutes, could add serial three's, could think abstractly, and spell forwards and backwards. AR 377. Dr. Acenas diagnosed anxiety due to medical condition and moderate stressors of unemployment and chronic medical condition. AR 377. However, she opined that Plaintiff did not have any work-related mental limitations. AR 373-74, 378. Although Plaintiff argues otherwise, nowhere in her opinion does Dr. Acenas state that Plaintiff has a severe mental impairment, and a mere diagnosis is insufficient to prove disabling functional limitations. *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the appellant clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'"); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (claimant failed to establish error because she failed to identify any functional limitations).

Finally, Plaintiff argues the ALJ's finding conflicts with SSR 85-16, which he contends establishes that "a severe mental impairment is a slight abnormality." Pl.'s Mot. at 18. This is incorrect. An impairment must significantly limit the ability to perform basic work activities in order to be considered severe. 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ evaluated Plaintiff's anxiety—including his testimony that he experienced anxiety attacks—and explained why Plaintiff had no more than mild limitation in any of the functional areas (AR 14-15). In sum, the ALJ's finding that Plaintiff did not have work restrictions from anxiety is supported by both the medical evidence and three medical opinions.

**B.  Plaintiff's Credibility**

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms." AR 17. However, he found that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. *Id*. Plaintiff argues the ALJ "cites to statements throughout the record which state Mizerik has improved," but these "out of context statements are not evidence but 'cherry picking'"

13

because he "is a cancer patient who is trying to get better." Pl.'s Mot. at 15. He argues the ALJ failed to address limitations for unscheduled restroom breaks and failed to pose hypothetical questions to the vocational expert about such breaks, selectively cited evidence in concluding that his condition was improving, and improperly considered Plaintiff's household activities in determining that he is able to work. *Id.* at 14-15.

1. <u>Legal Standard</u>

Congress expressly prohibits granting disability benefits based on a claimant's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) (an ALJ will consider all of a claimant's statements about symptoms, including pain, but statements about pain or other symptoms "will not alone establish" the claimant's disability). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). An ALJ is, however, required to make specific credibility findings. *See* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (the credibility finding "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

A two-step analysis is used when determining whether a claimant's testimony regarding their subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, it must be determined "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). A claimant does not need to "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant has met the first step and there is no evidence of malingering, "the

14

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen*, 80 F.3d at 1281). "The ALJ must state specifically which . . . testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. Where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record," courts must not engage in second-guessing. *Fair*, 885 F.2d at 604. However, "a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").

Factors that an ALJ may consider in weighing a claimant's credibility include: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, [claimant's] daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas*, 278 F.3d at 958-59 (quoting *Light*, 119 F.3d at 792).

2. <u>Application to the Case at Bar</u>

The ALJ's decision provides specific facts from the record that support his credibility determination. First, as discussed above, the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of his bowel issues and restroom breaks inconsistent because the medical record, including Plaintiff's statements, revealed that his symptoms were gradually improving. AR 17. The ALJ noted that on May 12, 2016, Plaintiff reported normal bowel function, and on August 1, 2016, he reported his bowel function was notable for less looseness of stool. AR 17, 273, 298. On November 15, 2016, Plaintiff reported that he resumed normal exercise and walked his dog three miles every day. AR 17, 285. The ALJ did note Plaintiff reported a resumption of urgency and frequency of bowel movements on February 17, 2017, but

15

that Plaintiff stated his condition had still gradually improved since the fall of 2016, with only occasional stool looseness and the frequency of bowel movements improved to two to three times a day. AR 17, 389. The ALJ also considered that he drove to the store in a typical day, which indicated that Plaintiff is able to drive without fear of a bowel movement. AR 17-18.

Second, the ALJ properly considered Plaintiff's daily activities. An ALJ may consider both activities that are transferrable to a work setting and activities that are inconsistent with allegations of total disability. *Valentine*, 574 F.3d at 694 (ALJ properly recognized that daily activities "did not suggest [the claimant] could return to his old job" but "did suggest that [the claimant's] later claims about the severity of his limitations were exaggerated"). On August 15, 2016, Plaintiff reported he was feeling well and had begun resuming normal exercise such as walking his dog. AR 17, 381. On November 15, 2016, Plaintiff reported that he resumed normal exercise and walked his dog three miles every day. AR 17, 285. The ALJ also considered Plaintiff's testimony that he does most of the chores around the house, does all the dishes and laundry because his wife works fulltime, and that he drove to the store in a typical day, which indicated that Plaintiff is able to drive without fear of a bowel movement. AR 17-18. The ALJ may consider such daily activities and "ordinary techniques of credibility evaluation," including inconsistencies in Plaintiff's statements and between Plaintiff's statements and the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Molina*, 674 F.3d at 1112-13 ("Even where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment") (citing *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1225 (9th Cir. 2010)); 20 C.F.R. § 404.1529(c) (in evaluating a claimant's alleged symptoms, the adjudicator may consider objective medical evidence and other evidence including the nature of a claimant's treatment and daily activities).

Finally, the ALJ was not required to pose hypothetical questions to the vocational expert regarding unscheduled bathroom breaks. Other than Plaintiff's own testimony, the ALJ found no evidence that Plaintiff's bowel issues would interfere with performing light work. And, as

16

discussed above, substantial evidence supports the ALJ's finding. Accordingly, the Court finds the ALJ's credibility determination must be affirmed.

**C.     Response to Cancer Treatment**

On February 17, 2017, Dr. Nurani found Plaintiff had a complete clinical response to his cancer treatment. AR 390. The ALJ noted this in his decision as part of his determination that Plaintiff's testimony regarding the severity of his symptoms was not consistent with the medical and other evidence in the record. AR 17. Plaintiff contends the evidence conflicts with the ALJ's finding because his cancer treatment is ongoing. Pl.'s Mot. at 12-13. However, the ALJ did not find that Plaintiff's prostate cancer did not require ongoing care; the ALJ simply re-stated the content of the note, in which Dr. Nurani opined that Plaintiff "has no clinical or biochemical evidence of reoccurrence of disease." AR 390. Importantly, the ALJ did not find Plaintiff unlimited—the ALJ recognized Plaintiff's cancer treatment and related symptoms, and ultimately limited him to light work in consideration of those issues. AR 16-17. As there was no legal error, the decision must be affirmed.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: July 17, 2018

MARIA-ELENA JAMES
United States Magistrate Judge